# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
August 15, 2024
Lyle W. Cayce
Clerk

No. 24-10432

_____

Palo Pinto County Conservatives; Grass Roots Mineral Wells PAC; Johanna Miller,

*Plaintiffs—Appellants*,

*versus*

Shane Long, *in his official capacity as Palo Pinto County Judge*;
Gary Glover, *in his official capacity as Palo Pinto County commissioner*;
Mike Reed, *in his official capacity as Palo Pinto County commissioner*;
Jeff Fryer, *in his official capacity as Palo Pinto County commissioner*;
Jim Pollock, *in his official capacity as Palo Pinto County commissioner*,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:24-CV-328

_____

Before Haynes,[†] Willett, and Oldham, *Circuit Judges*.

Per Curiam:[*]

---

[†] Judge Haynes concurs in this opinion except for § III(A)(ii) and the related part of the judgment. Her partial dissent is included at footnote four.

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-10432

In April 2024, the Palo Pinto County Commissioners Court enacted a set of electioneering regulations ("Regulations") that restrict where, when, and how people are permitted to electioneer on Palo Pinto County property. Two local grassroots organizations and one citizen subsequently sued, claiming the Regulations violate the First Amendment. The district court denied the plaintiffs' motion for a preliminary injunction. For the reasons herein, we VACATE the district court's order, GRANT a preliminary injunction of the Regulations in their entirety, and REMAND for further proceedings consistent with this opinion.

## I.  Background

The Palo Pinto County Annex ("Annex") is the main early voting and election day polling location in Palo Pinto County, Texas. The Annex is a square building with a small parking lot on its east side, a larger parking lot divided into thirds on its west side, and grassy areas on its north and south sides. A public street separates the western parking lot from the Annex. The property surrounding the Annex (hereinafter, "Annex Property") also includes several sidewalks. In addition to serving as a polling location, the Annex houses a number of county offices.

Primary elections took place in Texas on March 5, 2024. In Palo Pinto County, the ballot included a race for State Representative between incumbent Glenn Rogers and challenger Mike Olcott. A larger-than-normal crowd gathered in the parking lot of the Annex. The crowd included some members of the Palo Pinto County Conservatives—a grassroots organization of conservative citizens—who waved signs and approached voters to encourage them to vote for Olcott. According to Johanna Miller, who leads the Palo Pinto County Conservatives, the group was peaceful and complied with state regulations regarding electioneering near polling places. Nevertheless, according to Palo Pinto County Judge Shane Long, some

No. 24-10432

voters expressed frustration about having to pass through the crowd to reach the polling location. Judge Long also reported that at least one disabled citizen did not vote because he did not know if he could pass through the parking lot into the building. At one point, the police responded to a call for service at the Annex parking lot because of electioneering problems, although the details of that incident are not clear.

Approximately one month later, the Commissioners Court in Palo Pinto County enacted a set of "Electioneering Regulations" to "govern the time, place, and manner of electioneering within [c]ounty-owned property." The Regulations include several sections and subsections. The first section establishes the purpose and scope of the Regulations. The second section includes six subsections restricting where, when, and how "political signs" may be placed at the Annex, as well as limiting the size of such signs. *See* Regulations §§ 2(a)–(f). The last subsection in § 2 provides for the confiscation and recovery of any political signs violating the Regulations. *Id.* § 2(g). The third section of the Regulations establishes a "Designated Area for Electioneering" covering two portions of the west parking lot, as depicted in the following image appended to the Regulations:



The second and third subsections in § 3 specifically prohibit "loiter[ing] or electioneer[ing] on sidewalks or driveways" outside of that area and "post[ing] or plac[ing] political signs in public easements or rights-of-way," respectively. *Id.* §§ 3(b)–(c). The fourth section makes violating the Regulations a Class "C" Misdemeanor.

Shortly thereafter, Palo Pinto County Conservatives, Miller, and Grass Roots Mineral Wells PAC ("Plaintiffs") sued the members of the Palo Pinto County Commissioners Court ("County"), claiming the Regulations violate the First Amendment and seeking declaratory and injunctive relief. Plaintiffs filed a Motion for a Temporary Restraining Order and Preliminary Injunction. The district court denied the temporary restraining order. After holding a preliminary injunction hearing, the district court also denied the preliminary injunction and later entered a memorandum opinion and order explaining the denial. Plaintiffs timely appealed the denial of the preliminary injunction. Plaintiffs also filed an Emergency Motion for Injunction Pending Appeal, which we granted in part and denied in part.

## II.   Jurisdiction & Standard of Review

The district court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction over the denial of Plaintiffs' motion for a preliminary injunction pursuant to 28 U.S.C. § 1292(a)(1).

We review a district court's denial of a preliminary injunction for an abuse of discretion. *Women's Med. Ctr. of Nw. Hous. v. Bell*, 248 F.3d 411, 418–19 (5th Cir. 2001). "As to each element of the district court's preliminary-injunction analysis, the district court's findings of fact are subject to a clearly-erroneous standard of review, while conclusions of law are subject to broad review and will be reversed if incorrect." *Janvey v. Alguire*, 647 F.3d 585, 592 (5th Cir. 2011) (internal quotation marks and citation omitted).

## III.    Discussion

To be entitled to a preliminary injunction, Plaintiffs must show:

(1) a substantial likelihood that they will prevail on the merits; (2) a substantial threat that they will suffer irreparable injury if the injunction is not granted; (3) their substantial injury outweighs the threatened harm to the party to be enjoined; and (4) granting the preliminary injunction will not disserve the public interest.

*Voting for Am., Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) (quotation omitted). Factors three and four "merge when the Government is the opposing party." *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

### A. Likelihood of Success on the Merits

Electioneering laws present a "particularly difficult reconciliation: the accommodation of the right to engage in political discourse with the right to vote." *Minn. Voters All. v. Mansky*, 585 U.S. 1, 23 (2018) (quotation omitted). Here, the question is whether Plaintiffs are likely to succeed in showing that the County's attempt to balance these two interests on its own property violates the First Amendment.

The Regulations include nine subsections restricting speech in the form of "political signs" or "electioneering." *See* Regulations §§ 2(a)–(f), 3(a)–(c). The Regulations are therefore content based, as both parties agree. *See Burson v. Freeman*, 504 U.S. 191, 197–98 (1992) (plurality opinion) (stating a statute restricting political speech near polling places was facially content based). But the Regulations are also viewpoint neutral because they "make[] no distinction based on the speaker's political persuasion." *See Mansky*, 585 U.S. at 13. On their face, the Regulations apply only to property owned by Palo Pinto County. *See* Regulations § 1(b).

No. 24-10432

The Supreme Court has adopted a "forum analysis" to "evaluate [whether] government restrictions on purely private speech that occurs on government property" violate the First Amendment. *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 215 (2015). The parties disagree about what forum classification—and thus, what level of scrutiny—applies here. According to Plaintiffs, the Annex Property is a traditional or designated public forum, so any content-based regulations "must be narrowly drawn to effectuate a compelling state interest." *See Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45–46 (1983). But the County argues that the Annex Property is a nonpublic or limited public forum, meaning the Regulations are constitutional as long as they are "(1) reasonable in light of the purpose served by the forum and (2) do[] not discriminate against speech on the basis of viewpoint." *See Freedom From Religion Found., Inc. v. Abbott*, 955 F.3d 417, 426–27 (5th Cir. 2020). We need not settle that dispute today.

For the reasons below, Plaintiffs are likely to succeed in showing that all of the Regulations are unreasonable. Because the Regulations cannot meet the lower standard of reasonableness, they also fail the higher bar of strict scrutiny. Accordingly, we conclude the Regulations fail constitutional muster regardless of the forum classification.

i. **Regulations §§ 2(a), 2(c), 2(e), 2(f), and 3(c)**

"The reasonableness of the Government's restriction of access to a nonpublic forum must be assessed in the light of the purpose of the forum and all the surrounding circumstances." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 809 (1985). In *Mansky*, the Supreme Court assessed the reasonableness of a state's ban on political apparel in a nonpublic forum under a two-prong inquiry: (1) whether the state was "pursuing a permissible objective," and (2) whether the state could "articulate some

sensible basis for distinguishing what may come in from what must stay out." 585 U.S. at 13, 16.

According to the County, the Regulations' purpose is to "provide voters access to the polling location, free from undue harassment and undue influence." That is a permissible objective for the County to pursue. *See Burson*, 504 U.S. at 199 ("[A] State has a compelling interest in protecting voters from confusion and undue influence."); *Mansky*, 585 U.S. at 13–16 (concluding the state's wish to set aside a polling place as "an island of calm in which voters can peacefully contemplate their choices" was a permissible objective). Nonetheless, the use of the word "political" in §§ 2(a), 2(c), 2(e), 2(f), and 3(c)—without definition or limiting principle—ultimately renders those sections unreasonable and thus unconstitutional.

In *Mansky*, the Minnesota statute at issue prohibited "wearing a 'political badge, political button, or other political insignia'" but did not define the term "political." 585 U.S. at 17. The Court noted that "the word [political] can be expansive" and expressed concern about the lack of a limiting principle. *Id.* Ultimately, the Court concluded that the statute was unreasonable on that basis and thus violated the First Amendment even in a nonpublic forum. *Id.* at 22.

After *Mansky*, we upheld portions of the Texas Election Code that prohibit posting political signs within 100 feet of a door to a polling place, *see* Tex. Elec. Code §§ 61.003, 85.036, and wearing political apparel in a polling place, *see id.* § 61.010. *Ostrewich v. Tatum*, 72 F.4th 94, 107 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 570 (2024) (mem.). Contrary to the "unmoored use of the term 'political'" in Minnesota's unconstitutional law, *see Mansky*, 585 U.S. at 16, the Texas Election Code specifies that prohibited political signs include only those that are "for or against any candidate, measure, or political party." *Ostrewich*, 72 F.4th at 106 (quoting Tex. Elec.

7

Code §§ 61.003, 85.036). We concluded that this specification "cabined [the prohibition] by a limiting principle that meets *Mansky*'s standard." *Id.* Similarly, Texas's political apparel ban "only prohibits Texans from wearing apparel related to a candidate, measure, or political party 'appearing on the ballot,' thereby remedying the *Mansky* Court's concerns about overbroad or vague electioneering restrictions." *Id.* at 105 (quoting Tex. Elec. Code § 61.010); *cf. Mansky*, 585 U.S. at 22 (stating that the Texas statute at issue in *Ostrewich* "proscrib[ed] displays (including apparel) in more lucid terms" than the statute at issue in *Mansky*). These additional specifications in the Texas Election Code draw the requisite line between permitted and prohibited political content that was lacking in *Mansky*. *See Ostrewich*, 72 F.4th at 105–07.

Here, the Regulations do not define the term "political." Nor has the County provided any definition or limiting principle. *Cf. Mansky*, 585 U.S. at 17 (stating the Court will consider "a State's authoritative constructions in interpreting a state law" (internal quotation marks and citation omitted)). Indeed, when asked at the preliminary injunction hearing whether a hypothetical sign would be prohibited, Judge Long responded: "I don't know what someone might think about that. I can't answer that question, what would be in someone's mind, whether they would know they could or couldn't." Although Judge Long ultimately concluded that the sign was likely permissible, his own struggle articulating where to draw the line exemplifies the problem with the Regulations' ambiguous use of the term "political." *Mansky* requires more for a regulation to be reasonable. *See id.* at 16–22.

8

No. 24-10432

The County generally asserts that it intended the Regulations to be consistent with the Texas Election Code,[1] but that does not remedy the problem. As a preliminary matter, the Texas Election Code's restrictions on political signs only apply "within 100 feet of an outside door through which a voter may enter the building in which a polling place is located." TEX. ELEC. CODE § 61.003(a); *see also id.* § 85.036(a) (nearly identical quote). The state statutes are thus much more circumscribed than the Regulations, which extend to all corners of the Annex Property and cover multiple parking lots, sidewalks, and grassy areas. In other words, significantly more political speech is suppressed under the Regulations than under state law. We concluded in *Ostrewich* that Texas's restrictions on political signs in the 100-foot buffer zone struck a constitutional balance between "the right to engage in political discourse [and] the right to vote." *See* 72 F.4th at 103, 107 (quoting *Mansky*, 585 U.S. at 23). But we are concerned that the Regulations' extension of similar restrictions to a much larger area disrupts that careful balance.

Moreover, the fact that both the Regulations and the Texas Election Code use the term "political" does not help the County—in fact, contrasting the state statute with the Regulations exposes the Regulations' constitutional infirmity. Unlike the statutes upheld in *Ostrewich*, the Regulations do not include any language limiting "political" signs to only those related to issues "appearing on the ballot" or "for or against any candidate, measure, or

---

[1] For example, at the preliminary injunction hearing, Judge Long was asked, "Did Palo Pinto County intend the references to posting political signs in these regulations to be consistent with the Texas Election Code?" to which he answered, "Yes." Similarly, when asked to define the word "political" at oral argument, counsel for the County stated, inter alia, "At some point, you just got to use the words that everybody's using. . . . We're just using the words that the statute that's been deemed constitutional contains." Oral Arg. at 35:27-37.

No. 24-10432

political party." *Cf.* 72 F.4th at 105–06 (quotations omitted). Moreover, the County apparently knew how to reference definitional language in state statutes: § 2(a) of the Regulations refers to "the voting period of a particular election, *as defined in Section 61.003 (b)(2) of the Texas Elections Code*" (emphasis added). Yet the Regulations do not similarly refer to any statutory definition of "political."[2]

The Regulations thus restrict a substantial amount of speech beyond the 100-foot zone, and they do not provide any limiting principle regarding the prohibited "political" activity. Without such specification, the County has failed to articulate any sensible basis for what signs are restricted under §§ 2(a), 2(c), 2(e), 2(f), and 3(c). *See Mansky*, 585 U.S. at 22. Accordingly, Plaintiffs are likely to succeed in showing those subsections violate the First Amendment regardless of the forum in which they apply.[3]

---

[2] The last sentence in § 2(a) states that "[a]ll political signs shall comply with all state and federal requirements, including Texas Election Code, Chapters 255 and 259 and Section 61.003." But this broad compliance statement cannot serve to define an otherwise undefined category of speech, particularly given the numerous and varying definitions of "political" in state and federal law. Unlike the sentence in § 2(a) that adopts a specified statutory definition of "voting period," nothing in the Regulations tells a potential speaker that the Regulations only limit signs "for or against any candidate, measure, or political party." *See* Tex. Elec. Code §§ 61.003(a)(2), (b)(1). Importantly, the County itself does not seem to believe the Regulations' restrictions on "political signs" are limited to the definition in § 61.003: at oral argument, counsel for the County said "common sense" dictates that the word political is defined as "the issues that are being addressed and decided . . . within the confines of that election period," Oral Arg. at 27:18-25, but that definition is both narrower and broader than the definition in § 61.003. Thus, the general compliance statement in § 2(a) of the Regulations does not provide any limiting principle for the term "political."

[3] Although not cited at all in the County's brief, our decision in *Schirmer v. Edwards*, 2 F.3d 117 (5th Cir. 1993), served as a lodestar for the County at oral argument. That reliance was misplaced. *Schirmer* was a context-specific assessment under which a more narrowly tailored statute had previously failed to achieve the state's compelling interest. 2 F.3d at 122 (rejecting "the application of the exit-polling cases [in which smaller

No. 24-10432

### ii. Regulations §§ 2(b) and 2(d)

Two subsections of the Regulations implicate additional compelling government interests, and thus we address them separately.

First, § 2(b) prohibits posting "political signs using posts that may damage subterranean water and electrical lines." Judge Long testified at the preliminary injunction hearing that there is no sprinkler system in the parking lot area of the Annex Property, but there are electrical lines. According to Judge Long's testimony, "the intent [of § 2(b)] was to not damage county property," which is a reasonable and permissive objective. *See, e.g.*, *Boardley v. U.S. Dep't of Interior*, 615 F.3d 508, 519 (D.C. Cir. 2010) (endorsing undisputed argument that protecting national park property from damage was a substantial government interest).

Second, § 2(d) prohibits posting "a political sign in any location that obstructs vision for traffic entering, exiting, or driving in, on or around" the Annex Property, which furthers the County's legitimate interest in eliminating potential safety hazards. *See City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 416 (1993) (stating the city had a legitimate interest in maintaining the safety of its streets and sidewalks).

But again, the problem for the County is the use of the word "political"—without any definition or limiting principle—to identify the activity prohibited by these subsections. Under *Mansky*'s two-prong test,

---

restrictions around polling areas were invalidated] to the present context because the underlying state interests differ in each case"). More important, however, is the Supreme Court's intervening decision in *Mansky*, which explicitly requires something more than an "unmoored use of the term 'political'" to define prohibited speech. 585 U.S. at 16. To the extent that *Schirmer* states otherwise, we are bound to follow *Mansky*. *See Campos v. United States*, 888 F.3d 724, 737–38 (5th Cir. 2018) ("[U]nder this Circuit's rule of orderliness, a prior opinion remains binding except to the extent of the Supreme Court's change in the law.").

that failure "to articulate some sensible basis for distinguishing what may come in from what must stay out" is fatal regardless of the admirable government objectives that may underly the prohibitions. *See* 585 U.S. at 13–22 (concluding Minnesota had a permissible objective underlying the statute, but the statue was nevertheless unreasonable because of its "unmoored use of the term 'political'"). Moreover, a non-political sign can cause the same safety issues or property damage as a political sign, yet Judge Long testified that the County does not currently regulate non-political signs on County property. The Regulations' content-based distinction is thus not a rational way to pursue objectives related to safety and preventing property damage. Accordingly, we conclude that Plaintiffs are likely to succeed in showing that §§ 2(b) and 2(d) also fail the reasonableness inquiry.[4]

### iii.　Regulations §§ 3(a) and 3(b)

Two subsections of the Regulations restrict "electioneering" but do not use the term "political" at all: § 3(a) creates a "Designated Electioneering Area for electioneering," and § 3(b) prohibits "loiter[ing] or electioneer[ing] on sidewalks or driveways and interfer[ing] with citizen access to polling locations" outside of the Designated Electioneering Area. Like the rest of the Regulations, these subsections pursue the permissible objective of protecting voters from undue influence. *See Burson*, 504 U.S. at 199. The reasonableness inquiry thus turns on whether the restrictions on

---

[4] Judge Haynes: I would not grant the injunction on these two subsections because they directly address true safety issues. While the majority opinion notes that using the word "political" is a problem, because it concludes that term is broad, I think these subsections of the regulation are properly focused on safety such that the injunction should not be granted.

"electioneering" are "cabined by a limiting principle that meets *Mansky*'s standard." *See Ostrewich*, 72 F.4th at 106.

We conclude they are not. The Regulations do not define the term "electioneering," nor do they refer to any statutory definition of "electioneering." At the preliminary injunction hearing, Judge Long testified that he could not provide a "legal definition" of electioneering. He later testified that he would "defer to the Texas Election Code for a definition of electioneering." As we discussed in *Ostrewich*, the Texas Election Code's restrictions on electioneering "prohibit people from deploying political signs or literature '*for or against* any candidate, measure, or political party.'" *Id.* (emphasis added) (quoting Tex. Elec. Code § 85.036). But, contrary to that statutory definition, Judge Long testified that the Regulations criminalize distributing outside of the Designated Area for Electioneering a nonpartisan pamphlet that only provides information about candidates without taking any position on their candidacy.

As the Supreme Court has repeatedly stated, "[p]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Mansky*, 585 U.S. at 21 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)). But the Regulations provide no definition of "electioneering" at all, and the County's vague and contradictory explications only add to the confusion. That is particularly alarming "when the whole point of the exercise is to prohibit the expression of political views." *Id.* Plaintiffs are thus likely to succeed in showing that §§ 3(a) and 3(b) are unreasonable.

\* \* \*

The Regulations are unreasonable because of their vague use of the terms "political" and "electioneering" without definition or limiting principle. *See id.* at 22. This lack of clarity is even more concerning given

that violating the Regulations is a criminal offense. *See, e.g.*, *Reno v. ACLU*, 521 U.S. 844, 872 (1997) (stating that the "increased deterrent effect [of criminal sanctions], coupled with the risk of discriminatory enforcement of vague regulations, pose[d] greater First Amendment concerns than those implicated by [a previously reviewed] civil regulation" (internal quotation marks omitted)). Moreover, we are concerned about the Regulations' scope, which extends far beyond Texas's 100-foot electioneering-free zone upheld in *Ostrewich*. *See* 72 F.4th at 98, 107.

We thus conclude that all of the Regulations restricting speech in the form of "political signs" or "electioneering" violate the First Amendment. *See* Regulations §§ 2(a)–(f), 3(a)–(c).[5] Because the other portions of the Regulations serve only to implement or enforce those restrictions on speech,[6] Plaintiffs have demonstrated a substantial likelihood of success in showing that the Regulations are invalid in their entirety. *See Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987) (stating that severance is inappropriate where the remainder of the law "is incapable of functioning independently").

---

[5] We express no opinion regarding whether the Regulations would survive constitutional scrutiny if the County revised them to add further specification regarding the definition of "political" or "electioneering." Even with those additions, there may still be questions regarding the Regulations' constitutionality, particularly because the Regulations are much farther reaching than the Texas Election Code's restrictions on electioneering within the 100-foot zone. However, the question before us is only whether Plaintiffs are likely to succeed in showing that the Regulations—as currently written—violate the First Amendment. We conclude that the Regulations are likely unconstitutional for the reasons herein.

[6] Specifically, § 2(g) is only an enforcement mechanism allowing the County to remove "political sign[s] in violation of" the Regulations and thus does not appear to impose any independent restrictions on speech. Similarly, § 4 serves only to establish criminal liability for a violation of the Regulations. Those provisions, along with § 1 (regarding the purpose and scope of the Regulations) and § 5 (regarding the effective date), are purposeless without §§ 2(a)–(f) and 3(a)–(c).

### B. Threat of Irreparable Injury to Plaintiffs

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (per curiam) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)). Accordingly, we have previously concluded that a plaintiff satisfies the "substantial threat of irreparable injury" prong simply by showing that the challenged statute "represents a substantial threat to his First Amendment rights." *See Ingebretsen ex rel. Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996). As detailed in the previous section, Plaintiffs have made such a showing here, and thus this factor weighs in their favor.

### C. Harm to Government and Disservice to Public Interest

The County does not assert any threatened harm it will face as a result of a preliminary injunction in this case. On the contrary, we have stated that "injunctions protecting First Amendment freedoms are always in the public interest." *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) (quotation omitted). The third and fourth factors therefore favor granting Plaintiffs' requested preliminary injunction.

## IV.    Conclusion

For the reasons herein, we conclude that the district court erred in denying Plaintiffs' motion for a preliminary injunction. We thus VACATE the district court's judgment and order, GRANT a preliminary injunction of the Regulations in their entirety, and REMAND for further proceedings consistent with this opinion.